### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| TONY CLINGAMAN, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-2483 |
| | § | |
| CERTEGY PAYMENT RECOVERY | § | |
| SERVICES, | § | |
|     Defendant. | § | |

### MEMORANDUM AND ORDER

This Fair Debt Collection Practices Act ("FDCPA") case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 21] filed by Defendant Certegy Payment Recovery Services ("Certegy"), to which Plaintiff Tony Clingaman filed a Response [Doc. # 22], and Certegy filed a Reply [Doc. # 23]. Having carefully reviewed the full record and applied governing and persuasive legal authorities, the Court **grants** Defendant's Motions.

## I.     FACTUAL BACKGROUND

The facts in this case are either undisputed or viewed in the light most favorable to Plaintiff. It is undisputed that Plaintiff's wife, Jerry Clingaman, wrote a check in the amount of $49.56 that did not clear the bank when presented for payment. As a result, Jerry Clingaman incurred a $30.00 returned check fee. Jerry Clingaman failed to pay the $30.00 debt and it was referred to Certegy for collection. Jerry Clingaman

does not dispute that she owed the $30.00 debt, but notes that the original check was paid when presented again at a later date.

Certegy placed an initial telephone call to Jerry Clingaman on March 4, 2010, and left a voicemail message. Jerry Clingaman did not return Certegy's call. During the following weeks, Certegy placed additional telephone calls to Jerry Clingaman. On April 20, 2010, Plaintiff, who resides with his wife and shares the same telephone number, contacted Certegy to inquire into the nature of the calls. It is undisputed that Certegy advised Plaintiff that it was attempting to reach Jerry Clingaman in connection with her debt. It is undisputed that Plaintiff did not complain to Certegy about the telephone calls and did not ask Certegy to stop making the calls. Plaintiff states for the first time in an affidavit filed in connection with his Response that he told Certegy that he would not "make a payment over the phone." He does not state, however, that he or Jerry Clingaman disputed the existence of the debt or disputed that Jerry Clingaman was the debtor and lived at the residence associated with the telephone number Certegy was calling.

According to Certegy's business records, no telephone calls were placed to Jerry Clingaman after May 3, 2010. Plaintiff's records, admittedly prepared after the events in question and at the request of his attorney, are confusing and inconsistent at best. Plaintiff's records do not include any calls before April 11, 2010, although it is

undisputed that Certegy first called Plaintiff's wife on March 4, 2010.  Plaintiff's

records include a tally of telephone calls from Certegy between April 11 and April 18,

2010, indicating that there were ten (10) calls from Certegy.  Plaintiff in his sworn

Complaint and sworn First Amended Complaint alleges under penalty of perjury that

there were ten (10) calls from Certegy during the week of April 12-18, 2010.

Plaintiff's own records do not, however, support these assertions.  None of the "Caller

ID Phone" numbers for the April 11-18, 2010, period is the number identified in the

Complaint and First Amended Complaint as the number from which Certegy was

calling.[1]  *See* Plaintiff's "Call Log," Exh. E to Response.  Many of the entries are

duplicates.  Plaintiff states in his Response that his records indicate that Certegy

telephoned his wife forty-two (42) times between March 4, 2010 and April 20, 2010,

and placed six (6) calls between April 29, 2010 and May 3, 2010, and telephoned

forty-eight (48) times between May 3 and June 18, 2010, for a total of ninety-six (96)

calls between March 4, 2010, and June 18, 2010.  Plaintiff's Call Log, however,

contains only fifty-five (55) calls from Certegy's phone number.

Accepting the Call Logs as true for purposes of the pending Motion, Plaintiff

has presented evidence that Certegy telephoned his wife fifty-five (55) times between

---

[1]      It appears that Plaintiff purports to have listed calls from Certegy and calls from other debt collectors on one Call Log.

March 4, 2010, and June 18, 2010.  On most days, there was only one call.  On only two days were there as many as four (4) calls, all occurring after May 3, 2010, the last date Defendant's business records indicate a call was made to Plaintiff's wife.

Plaintiff filed this lawsuit on July 12, 2010, alleging that Certegy violated § 1692d(5) of the FDCPA by causing Plaintiff's "telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiff."[2]  Plaintiff alleged that Certegy made phone calls to two different telephone numbers in connection with a debt owed "by Plaintiff's wife."  The Complaint included a Verification under penalty of perjury that the facts alleged were true.

On November 11, 2010, Plaintiff filed a First Amended Complaint [Doc. # 14] that also included a Verification under penalty of perjury that the facts alleged were true.  In the First Amended Complaint, Plaintiff again alleged that Defendant placed telephone calls to two different telephone numbers.  In the First Amended Complaint, contrary to the allegation in the sworn Complaint, Plaintiff alleges that Certegy was attempting to collect a debt owed by "Plaintiff and Plaintiff's wife."  In both the Complaint and the First Amended Complaint, Plaintiff states under penalty of perjury

---

[2]     During roughly the same time period, Plaintiff filed nine (9) similar lawsuits against various other debt collectors.  Plaintiff admitted in his deposition that he kept records of telephone calls from debt collectors rather than ask them to stop calling because he hoped to get some form of compensation from them that he could use to pay off his debts.  *See* Deposition of Tony Clingaman, Exh. B to Motion, p. 175.

that Certegy made forty-one (41) telephone calls to Plaintiff's wife between April 12, 2010, and June 16, 2010.

In support of his Response to Defendant's Motion for Summary Judgment, Plaintiff submits his own affidavit.  In the Affidavit, Plaintiff states, consistent with his Complaint and contrary to his sworn First Amended Complaint, that Certegy was telephoning in connection with a debt incurred by his wife.  Plaintiff also states in the affidavit, contrary to both the sworn Complaint and the sworn First Amended Complaint, that Certegy placed phone calls to only one telephone number.

After a full opportunity to conduct discovery, Defendant moved for summary judgment.  The Motion has been fully briefed and is ripe for decision.

## II.    STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted

evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe.  *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413).  The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence.  *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).   A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud." (citation omitted)).  Moreover, "it is well settled that this court does

not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)); *accord Doe v. Dallas Independent School District*, 220 F.3d 380, 385-87 (5th Cir. 2000); *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002).

## III.   ANALYSIS

The FDCPA provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.  Section 1692d(5) prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."   Although most sections of the FDCPA are strict liability provisions, § 1692d(5) contains an "intent" requirement.   15 U.S.C. § 1692d(5); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 n.11 (9th Cir. 2006).  The statute is intended to "eliminate abusive debt collection practices by debt collectors."  *See* 15 U.S.C. § 1692(e).

Any debt collector who violates the FDCPA is liable for actual damages sustained as a result of the violation, statutory damages not to exceed $1,000.00, costs, and attorneys' fees. 15 U.S.C. § 1692k; *Gonzalez v. Kay*, 577 F.3d 600, 604 (5th Cir.

2009).   Plaintiff in this case does not allege or seek actual damages, only the $1,000.00 in statutory damages, costs, and attorneys' fees.

Plaintiff bases his FDCPA claim on the volume of calls made by Certegy to his telephone number.   Plaintiff does not challenge the pattern of the calls, which according to his records all occurred no earlier than 8:00 a.m. and no later than 9:00 p.m. Plaintiff does not allege that Certegy placed repeated calls within a short period of time during the day.  It is undisputed that Plaintiff never asked Certegy not to place telephone calls to his home and, indeed, Plaintiff conceded that he did not want the calls to stop because he wanted to track any potential violations of the FDCPA. *See* Clingaman Depo., p. 186.  Therefore, the sole basis for Plaintiff's complaint is the fifty-five (55) phone calls (accepting Plaintiff's "Call Log" as true) placed by Certegy between March 4, 2010, and June 18, 2010.

Plaintiff's evidence, viewed in the light most favorable to him, does not raise a genuine issue of material fact regarding whether Certegy placed telephone calls to Plaintiff's wife with the intent to harass and annoy Plaintiff rather than in a legitimate attempt to locate Plaintiff's wife and discuss the $30.00 debt with her.  Other courts have granted summary judgment in favor of the defendant in similar, yet more egregious, circumstances.  In *Tucker v. CBE Group, Inc.*, the court granted summary judgment in defendant's favor where the defendant made up to seven calls per day to

a phone number assigned to the plaintiff and not to his debtor daughter.[3]  *See Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1303 (M.D. Fla. 2010).  Here, the most calls Certegy made in one day was four and that occurred only twice.  Moreover, it is undisputed that the telephone number Certegy was calling was the correct number for debtor Jerry Clingaman.

In *Carman v. CBE Group, Inc.*, the court granted summary judgment in favor of a defendant who placed 149 telephone calls to the plaintiff during a two-month period.[4]  *Carmen v. CBE Group, Inc.*, __ F. Supp. 2d __, 2011 WL 1102842, *4 (D. Kan. 2011).  In *Saltzman v. I.C. Sys., Inc.*, the court granted summary judgment for a defendant who placed between 22 and 60 calls in a five-week period during which the plaintiff did not answer the telephone because she recognized the defendant's telephone number on her caller ID.  *Saltzman v. I.C. Sys., Inc.*, 2009 WL 3190359, *6 (E.D. Mich. Sept. 30, 2009).  Here, viewing the evidence in the light most favorable to Plaintiff, Certegy placed only 55 phone calls to Plaintiff's wife over a period of three and one-half months.  As noted by the court in *Saltzman*, the evidence "suggests a 'difficulty of reaching Plaintiff, rather than an intent to harass.'"  *Id.* at *7.

---

[3]    Plaintiff's law firm, Krohn & Moss, Ltd., represented the plaintiff in *Tucker*.

[4]    Plaintiff's law firm, Krohn & Moss, Ltd., represented the plaintiff in *Carmen.*.

Plaintiff relies primarily on the unpublished decision from the Eleventh Circuit in *Meadows v. Franklin Collection Srvc., Inc.*, 2011 WL 47997 (11th Cir. Feb. 11, 2011).  In that case, however, the plaintiff did not owe the debts at issue – certain debts were owed by Meadows' daughter and other debts were owed by the family that was previously assigned the Meadows' current telephone number.  Meadows presented evidence that the debt collector called her about 300 times over a period of two and one-half years.  Meadows would frequently receive three calls per day.  It was undisputed that Meadows asked the debt collector to stop calling.  The Eleventh Circuit noted specifically that Meadows received "approximately 300 calls over a two and a half year period regarding debts she did not owe and people she did not know" and that the calls continued for over two years after Meadows informed the defendant that the debts were not hers and that the debtors did not live at the address assigned to the phone number.  *Id.* at *2.  Indeed, the focus of the Eleventh Circuit's decision was whether the defendant's "follow-up activities were reasonable," a fact issue to be decided based primarily on when and in what manner Meadows informed the defendant of the facts regarding the debt and debtors and asked it to stop calling her. The Eleventh Circuit held that, taking the evidence in the light most favorable to the plaintiff, "a reasonable jury could conclude that Franklin's calling practices were harassing because Franklin continued to call Meadows despite being on notice that she

was not the debtor and that her phone number was not correct" for the actual debtors. *Id.* at *3. The circumstances in *Meadows* are vastly different than those in Mr. Clingaman's case and the *Meadows* decision does not support Plaintiff's claim.

## IV.   CONCLUSION AND ORDER

Plaintiff has not presented evidence that raises a genuine issue of material fact in support of his claim under § 1692d(5) of the Fair Debt Collection Practices Act. Plaintiff's evidence, taken as true for purposes of this Motion, does not support a finding of an intent to annoy, abuse, or harass Plaintiff. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 21] is **GRANTED**. The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas this 26th day of **May, 2011**.

Nancy F. Atlas
United States District Judge